ARNOLD TRAPP and JANE TRAPP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Trapp v. Commissioner
Docket No. 3024-78.
United States Tax Court
T.C. Memo 1980-49; 1980 Tax Ct. Memo LEXIS 530; 39 T.C.M. (CCH) 1085; T.C.M. (RIA) 80049; February 27, 1980, Filed Arnold Trapp, pro se. William M. Gross, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: The Commissioner determined a deficiency of $3,528.00 in petitioners' income tax for the year 1976. Concessions having been made, the issue for decision is whether amounts petitioner Arnold Trapp paid for meals, lodging and automobile travel are deductible as travel expenses under section 162(a) (2). [1]
*531 FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, filed a joint income tax return for 1976. They resided in Bricktown, New Jersey, at the time their petition was filed. Petitioner, Arnold Trapp (hereinafter referred to as petitioner), has been a union electrical construction worker since approximately 1953. During most of this period he has maintained his family residence in the vicinity of Bricktown, New Jersey. Petitioner became unemployed in 1974. Employment opportunities for electricians within the geographic area of his union's local chapter (Local 400 of the International Brotherhood of Electrical Workers) did not exist at that time. Eventually, petitioner became willing to accept employment anywhere in the country. After having been unemployed for approximately nine months, petitioner accepted employment in May of 1975 with Fishbach and Moore, Inc., at the North Anna Power Station in Virginia (hereinafter North Anna). North Anna is approximately 12 miles from Mineral, Virginia, and 50 miles from Richmond, Virginia. *532 When petitioner commenced working at North Anna he did not know the duration of his employment as there was no definite contract between petitioner and his employer. A nuclear power station was being constructed at North Anna. It had been under construction for approximately seven years and completion was likely within the next five to eight years. Petitioner initially assisted in the installation of a fire alarm system. Although petitioner did not know how long that particular project would last, he anticipated remaining employed until its completion. Upon completion, petitioner would either be laid off or reassigned to a different phase of the construction. If fortunate enough to be reassigned, he would remain on the job until the new assignment was completed. Petitioner worked on the fire alarm system for approximately six months. He then was reassigned to another project. Petitioner worked on approximately seven different projects, with each new assignment thereby extending the duration of his employment. The term of his service, from May of 1975 until August of 1977, was continuous except for a two-week period during each of the Christmas seasons in 1975 and 1976. *533 Petitioner and his wife have resided in the Bricktown-Point Pleasant area of New Jersey for approximately 20 years. He had no desire to remain in Virginia permanently since his wife, at the time, had been employed at the same job for approximately twelve years and he was aware that she did not wish to relocate. Moreover, petitioner and his wife were concerned whether schooling for their son would be adequate in Virginia. As a consequence, during 1976 petitioner was in constant contact with the local chapter of his union in an attempt to locate employment in New Jersey. When petitioner commenced his employment at North Anna, he initially lived in a house in Mineral, Virginia, with nine other construction workers. When it became apparent to him that he would be working at the North Anna site for more than a month, he moved to a motel in Fredericksburg, Virginia, which was approximately 30 miles away. Petitioner commuted daily between his hotel in Fredericksburg and the job site. In addition, he travelled to his home in New Jersey when he did not work weekends as his wife and son had remained there. On his 1976 tax return, he deducted the cost of his meals and lodging in *534 Virginia and also the cost of transportation between the motel and job site and to his residence in New Jersey. OPINION The issue for decision is whether petitioner is entitled to deduct the expenses related to his employment at North Anna. Petitioner contends that the expenses he incurred for meals, lodging and automobile travel are deductible under section 162(a)(2) [2] as travel expenses he incurred while away from home in pursuit of a trade or business. Respondent argues that this issue must be resolved against the petitioner since his employment at North Anna was indefinite in nature and not temporary. Ta taxpayer's "home" for purposes of section 162 is the vicinity of his principal place of employment. Daly v. Commissioner, 72 T.C. 190 (1979). *535 When a taxpayer with a well established tax home accepts employment away from home, travel expenses are deductible only if such employment is temporary or for a short duration. Commissioner v. Peurifoy, 254 F. 2d 483 (4th Cir. 1957), rev'g. 27 T.C. 149 (1956), aff'd. per curiam 358 U.S. 59 (1958); Kroll v. Commissioner, 49 T.C. 557 (1968). If the employment accepted is for an indefinite or indeterminate period, then the taxpayer is not regarded as being "away from home" for purposes of section 162(a)(2). Generally, employment is considered temporary if it "can be expected to last for only a short period of time." Tucker v. Commissioner, 55 T.C. 783 (1971), at 786. In this regard, inquiry into the nature of the job at the time employment is accepted is relevant. Albert v. Commissioner, 13 T.C. 129 (1949). Even if the employment is initially temporary, it may subsequently become indefinite because of changed circumstances. Norwood v. Commissioner, 66 T.C. 467 (1976); Kroll v. Commissioner, supra.Further, employment which will terminate at some future *536 date will not be temporary if the job is expected to last for a substantial or indefinite period of time. Jones v. Commissioner, 54 T.C. 734 (1970), aff'd. 444 F. 2d 508 (5th Cir. 1971); Cockrell v. Commissioner, 38 T.C. 470 (1962), aff'd. 321 F. 2d 504 (8th Cir. 1963). Petitioner argues that his job was merely temporary. In support of this contention he has submitted a letter from his employer's project accountant which states: There is no permanent employment available and all electricians are considered temporary employees. Due to the considerable fluctuation of our work and our schedule, we cannot guarantee employment for any length of time. [3]
Petitioner also testified that at the time he began working at North Anna, he had no idea how long his job would last. Although it is arguable that petitioner's employment at North Anna may have been temporary when he accepted the job in May of 1975, by 1976, *537 the year in which the deductions were taken, his employment had become indefinite. Petitioner survived a series of layoffs at North Anna and as a result he worked there from May of 1975 until August of 1977. These layoffs usually coincided with the completion of a particular project or phase of construction. Petitioner testified that the first major layoff occurred in November of 1975, right at the time when the fire alarm system (the project he was initially assigned to) was completed. Petitioner was then transferred to another project, and then another, with the next layoffs occurring in February and November of 1976. In November of 1975, after the fire alarm system was completed, there began a period during which petitioner was transferred from one project to another. All in all, he worked on over seven different projects during the twenty-seven months he was employed at North Anna. [4] Thus by 1976, petitioner's employment had become indefinite or indeterminate in fact. *538 Even though petitioner may have had no assurance as to how long his employment at North Anna would last, such is not determinative of whether his employment was temporary, McCallister v. Commissioner, 70, T.C. 505 (1978). The lack of permanence does not necessarily require a finding that the employment was temporary for purposes of section 162(a)(2). Garlock v. Commissioner, 34 T.C. 611, at 616 (1960). Further, petitioner's employment lasted approximately twenty-seven months. The substantial actual duration of his employment provides additional proof that the employment was "indeterminate in fact as it developed." Norwood v. Commissioner, supra; Commissioner v. Peurifoy, supra.
In support of his argument that his job at North Anna was merely temporary, petitioner maintains that he always had intentions of moving back to New Jersey. Because of his wife's long term employment in New Jersey, his family's ties in New Jersey and the lack of adequate schooling for his son in Virginia, moving to Virginia was not viewed as a viable alternative. To buttress this contention petitioner has cited several recent memorandum *539 opinions of this Court. [5]
Although memorandum opinions of this Court are not relied upon as precedent, we seek to treat taxpayers consistently. However, in this area of the tax law reliance on the facts of prior opinions can often provide only minimal support for a party's contentions as the issue of whether employment is temporary or indefinite is essentially a "narrow question of fact," with each case turning on its own unique set of facts. Peurifoy v. Commissioner, 358 U.S. at 60-61. In the numerous opinions of this Court the issue has often been decided on the particular facts of each individual case. [6] Thus for example, Otness v. Commissioner, supra, *540 can be distinguished since the seasonal element of the taxpayer's job supported a finding that the employment was temporary. Similarly, Brown v. Commissioner, supra, can be distinguished since the taxpayer's employment retained its "temporary" status (notwithstanding its 31 month duration), because of extraordinary unforeseen difficulties the taxpayer's employer encountered in completing the project. Petitioner's situation is also unlike that of the taxpayers in Waldrop, Babeaux and Brown. Because of his transfer from one project to another, the very nature of his employment demonstrates his job's indefinite character. We also note that not only were these three decisions reversed by the Court of Appeals, but also that as memorandum decisions of this Court they are not precedential for purposes of this decision. Although we sympathize with petitioner's case, the reasons for his retention of a New Jersey residence cannot undercut our finding *541 that his employment at Korth Anna was not temporary. He has failed to carry his burden of proof that his employment was not for a substantial or an indefinite period. Welch v. Helvering, 290 U.S. 111 (1933). Petitioner's additional living costs were personal in nature as they resulted from his decision to retain his New Jersey residence and not from his employment. Congress has specifically prohibited the deduction of personal, living or family expenses in section 262. As we stated in Tucker: By any reasonable standard, the prospects of employment in that area must have seemed bleak, or at best unpromising; yet, the petitioner chose to keep his family residence there for reasons of personal choice that were despite, rather than because of his trade or business. [Emphasis in original.] Tucker v. Commissioner, supra, at 781. Accordingly, we hold that petitioner was not away from home in 1976 for tax purposes and that the expenses incurred for meals, lodging and transportation are not deductible. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended, and in effect during the year in issue.↩
2. Section 162(a)(2) provides: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *↩
3. We note that this letter, aside from being conclusory, is hearsay and technically inadmissible. However, in fairness to pe petitioner, we have considered it for whatever probative value it may offer.↩
4. The facts of this case are similar to those presented in Bark v. Commissioner, 6 T.C. 851↩ (1946). There, the taxpayer, who had commenced employment at a job away from home, anticipated working only on a single project (the installation of a forging press) which would last three months. Prior to the completion of the project his employer acquired a second press, and then another. As a result, each acquisition extended the duration of the taxpayer's employment. This Court held that although the taxpayer's employment was originally indefinite, by the time of the year at issue it had become indeterminate in fact.
5. Otness v. Commissioner, T.C. Memo. 1978-481; Brown v. Commissioner, T.C. Memo. 1971-7; Waldrop v. Commission er, T.C. Memo. 1977-190, rev'd. 601 F. 2d 730 (4th Cir. 1979); Patrick v. Commissioner, T.C. Memo 1977-153; Babeaux v. Commissioner, T.C. Memo. 1977-154. Waldrop, Patrick and Babeaux were reversed in Babeaux v. Commissioner,601 F. 2d 730↩ (4th Cir. 1970).
6. "No single element is determinative of the ultimate factual issue of temporariness, and there are no rules of thumb, durational or otherwise." Norwood v. Commissioner, 66 T.C. at 470↩.