Estate of Robert S. Shelley, Deceased, Dagmar Shelley, Administratrix v. Commissioner.
Estate of Robert S. Shelley v. Commissioner
Docket No. 3923.
United States Tax Court
1945 Tax Ct. Memo LEXIS 144; 4 T.C.M. (CCH) 668; T.C.M. (RIA) 45220; June 25, 1945
*144 Deductions from gross income: Traveling expenses of racing secretary and handicapper. - Where taxpayer's business necessitated his being away from his residence in Miami, Florida, for approximately 5 months of every year but he at no time gave up his home there, it is held that his home was in Miami and expenses incurred while conducting his business outside of Florida were properly deductible. On the evidence it is further held that the amounts expended were reasonable. Albert B. Bernstein, Esq., and J. I. Keller, Jr., C.P.A., 1406 Security Bldg., Miami, Fla., for the petitioner. *145 F. L. Van Haaften, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This case involves deficiencies in income tax for the calendar years 1940 and 1941 in the respective amounts of $564.49 and $1,123.95. The sole issue is whether respondent erred in disallowing deductions claimed in the income tax returns of the decedent for traveling and living expenses alleged to have been incurred while away from home in connection with his business as racing secretary and handicapper. Findings of Fact Robert S. Shelley died February 6, 1944. His wife, Dagmar Shelley, has been duly appointed as the administratrix of his estate and substituted as petitioner, the petition having been filed before his death. In the taxable years 1940 and 1941 Shelley resided at 244 Southwest 28th Road, Miami, Florida. He was married and had a family consisting of his wife and two children. He filed his income tax returns with the collector of internal revenue at Jacksonville, Florida, and the tax shown to be due has been paid. In 1936 Shelley purchased a home in Miami, Florida, and moved into it, with his family, on January 1, 1938. They continued to *146 occupy it as a home through and including the taxable years. Shelley was a registered voter in Miami, Dade County, Florida, during both of the years. For state tax purposes he claimed and was allowed certain exemptions as a resident of Florida. His automobile carried a Florida license tax and his children attended school in Miami. For many years, including 1940 and 1941. Shelley had been employed as a racing secretary and handicapper, working for various racing associations. During the taxable years he served in that capacity at the following named tracks, which held meets as shown: Tropical Park, Coral Gables, Fla.
March 1 to April 10
Narragansett Park, Pawtucket,
R. I.
April 17 to May 18
Arlington Park, Arlington, Ill.
June 24 to July 27
Narragansett Park, Pawtucket,
R. I.
August 26 to October 5
Sportsmen Park, Cicero, Ill.
October 7 to November 7
Tropical Park, Coral Gables, Fla.
December 20 to December 31
In addition to the time spent at the tracks during actual racing periods Shelley spent about 10 additional days at Narragansett Park prior to the first meet, 14 days prior to the second meet in 1940, and 30 days prior to the second in 1941. He *147 spent approximately 30 days at Chicago prior to the Arlington Park meet, and a few days in each city prior to the various meets. Shelley's duties as racing secretary and handicapper included the scheduling of all races, arranging with the owners of horses to have them entered in the various races, passing upon applications for stabling and thus determining the horses which would be present, preparing condition books which listed the races to be run, arranging the various classes of races and handicapping all horses entered. Handicapping is an incident in securing evenly matched contests and includes the assignment of weight. Fixing of handicaps is largely a matter of personal opinion, based upon observation and known history of the horses. There is no appeal from the decision of a handicapper. Shelley's duties required him to be at, or close to, the tracks when they were opened and usually before the opening. In most of the states (including those in which petitioner worked as a secretary and handicapper) racing is permitted for only a limited number of days each year. Petitioner therefore had to go from track to track in carrying on the duties of his employment. During the *148 year 1940 Shelley made the following railroad trips: he went to Providence, R.I., in the spring and returned to Miami. Later he went from Miami to Chicago, from Chicago to Providence, from Providence back to Chicago and from Chicago back to Miami. All of these trips were in connection with his activities as racing secretary. In 1941 his first trip was from Miami to Providence, returning to Miami. His second trip was from Miami to Chicago, then to Providence, then totoronto, Canada, then back to Providence, from Providence to Chicago, and from Chicago back to Miami. All of these trips were taken in connection with his occupation as a racing secretary. During the time spent away from Miami such personal effects as Shelley did not need with him on the trips were left in Miami. During his absence his home at 244 Southwest 28th Road, Miami, was not closed. Shelley spent approximately 5 months in each year at the various tracks outside of Florida. His wife spent approximately one-half of that time with her husband. She lived in a rented house with her husband while they were in Chicago and Narragansett. Shelley spent at least $10 a day for personal living expenses while away from his *149 home on duty at the various race tracks. In his income tax return for the year 1940 Shelley deducted the sum of $2,030 for living expenses while working at race tracks away from Florida and the sum of $251.75 for railroad fare to and from such tracks located outside of Florida. In his income tax return for 1941 he deducted the sum of $2,040 for living expenses while at race tracks outside of Florida and the sum of $555 for railroad fares to and from such race meets. The claimed deductions were disallowed by the respondent. Opinion Section 23 (a) of the Internal Revenue Code provides for the deduction in computing net income of: All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in pursuit of a trade or business. The Commissioner contends that the term "home" as used in the statute is to be distinguished from domicile and should be construed to mean the principal place of business, post of duty or place of employment. He argues that decedent's "home" was at his respective *150 posts of duty for such time as he was there and for that reason the expenditures were "personal, living, or family expenses" within the meaning of section 24 (a) and not deductible from income. Respondent relies upon the rule enunciated in Mort L. Bixler, 5 B.T.A. 1181, which, he points out, was followed in Charles E. Duncan, 17 B.T.A. 1088, affirmed without opinion 47 Fed. (2d) 1082; George W. Lindsay, 34 B.T.A. 840, and Walter M. Priddy, 43 B.T.A. 18. In the Bixler case the Board held that traveling and living expenses are deductible only while the taxpayer is away from his place of business, employment, post or station at which he is employed in the prosecution, conduct and carrying on of a trade or business. The rule appears to have been somewhat relaxed following reversal by the Circuit Court of Appeals for the Second Circuit in Coburn v. Commissioner, 138 Fed. (2d) 763. Cf. Harry F. Schurer, 3 T.C. 544; Charles G. Gustafson, 3 T.C. 998. The answer in each case depends primarily upon the facts. Cf. Barnhill v. Commissioner, (4 C.C.A., decided April 9, 1945, 148 Fed. (2d) 913, *151 in which a Justice of the Supreme Court of North Carolina was denied the deduction where the court was required to sit at Raleigh and his home was maintained at a distance for his own convenience. In Wallace, et al. v. Commissioner, 144 Fed. (2d) 407, the Circuit Court of Appeals for the Ninth Circuit reversed a memorandum opinion of this court which held that where a movie actress was domiciled in San Francisco, but was away from home, at Hollywood, for about nine months of the year, amounts spent for food, rent and traveling expenses were not deductible. To the same effect see Coburn v. Commissioner, supra, and Flowers v. Commissioner, 148 Fed. (2d) 163. In the latter case the court construed the word "home" in section 23 (a) to mean "that place where one in fact resides, * * * the principal place of abode of one who has the intention to live there permanently" with his family, and not the post, station or place of business where the taxpayer is employed. See also Joseph W. Powell, 34 B.T.A. 655, aff'd. 94 Fed. (2d) 483. Here, as in several of the cases cited above, the facts do not support a finding that the decedent's *152 home followed his vocation in several other states. He lived with his family in Florida in his own home. He voted in Florida; he always returned to Florida at the end of the racing season. It would require a strained construction of the statute to hold that he established a home each time he moved from one race track to another. In our judgment his home throughout the calendar years 1940 and 1941 was in Miami, Florida. We therefore hold that the expenses in question were properly deducted from gross income for the respective years. It is true, as respondent argues, that the expenditures for living expenses while at the various racing posts were, to some extent, estimated. It appears from the evidence, however, that the estimates were in fact less in many instances than the amounts actually expended. The amount claimed is only approximately $10 a day. We think it is reasonable and should be allowed. Cf. Julia Dahl, et al. Executors, 24 B.T.A. 1167, and Cohan v. Commissioner, 39 Fed. (2d) 540. An uncontested adjustment to 1940 income makes it necessary that a recomputation of the deficiency for that year be made. Therefore Decision will be entered under *153 Rule 50.