Albert A. Loden and Margaret Loden v. Commissioner.
Loden v. Commissioner
Docket No. 55432.
United States Tax Court
T.C. Memo 1956-29; 1956 Tax Ct. Memo LEXIS 270; 15 T.C.M. (CCH) 134; T.C.M. (RIA) 56029; January 31, 1956
*270 1. Petitioner Albert A. Loden is by occupation an electrician. For most of the taxable year 1952, petitioner, his wife and daughter had a residence on a farm at Shannon, Mississippi, where they had rented six acres for the cultivation of cotton. Petitioner was employed during the year 1952 until July 1 as an electrician at the Atomic Plant near Paducah, Kentucky; then, beginning about the middle of July, he was employed as an electrician by a company constructing a plant in Woodstock, Tennessee, near Memphis. His employment terminated there the latter part of November and he secured employment as an electrician in the construction of an aluminum plant near New Orleans, Louisiana. He incurred expenses for meals and lodging during 1952 while in pursuance of his occupation as an electrician for 201 days at $5 per day while he was away from his home. Held, petitioners, who filed a joint return for 1952, are entitled to a deduction for the amount expended by Albert Loden for meals and lodging while away from home under section 22(n)(2) and section 23(a)(1)(A) of the Internal Revenue Code of 1939. Commissioner v. Flowers, 326 U.S. 465, distinguished. 2. During 1952, petitioner *271 Albert Loden made 36 round trips from his places of employment in Kentucky and Tennessee to his home in Shannon, Mississippi. He also made a trip from Memphis, Tennessee, to New Orleans, Louisiana, in early December to seek employment there and he made a trip from New Orleans to Shannon for the purpose of moving his family to New Orleans. Petitioner claims a deduction as travel expenses while away from home of 16,154 miles at seven cents per mile. Held, petitioner's small farming operations at Shannon required no travel; his job as an electrician while working at the three different plants in Kentucky, Tennessee, and Louisiana required no travel away from home. Petitioner's trips to Shannon and return to where he was working were made primarily to visit his family and were personal expenses and are not deductible under section 22(n)(2) and section 23(a)(1)(A) of the 1939 Code; also the other mileage expenses incurred by petitioner in 1952 are not deductible. Albert A. Loden, 1233 Ninth Street, Portsmouth, Ohio, pro se. Lester R. Uretz, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioners' income tax for the year 1952 of $415.84. The deficiency is due to four adjustments made by the Commissioner to the income as reported on petitioners' joint return. These adjustments were: (a) Travel expense
$1,620.00
(b) Itemized deductions
7.03
(c) Income - travel allowance
4.20
(d) Farm income
241.90
Total
$1,873.13
The main adjustment which respondent made, adjustment (a), is explained in the deficiency notice as follows: "(a) In your return for the year 1952, you deducted $1,620.00 in arriving at adjusted gross income with the explanation: 'Expense of Board and Lodging and travel while on the job and away from home, computed at $9.00 per day for 180 days.' It is held that you are not entitled to a deduction for *273 travel, meals and lodging while away from home in pursuit of a trade or business under the provisions of sections 23(a) and 22(n) of the Internal Revenue Code." To the main adjustment (a), petitioners assign error as follows: "1. Commissioner did not allow traveling expenses while away from home in the course of his trade or business in the amount of $1,130.78. "2. Commissioner did not allow expenses of board and lodging while away from home in the pursuit of the trade or business in the amount of $1,005.00." No errors were assigned to the other adjustments made by the Commissioner in his deficiency notice. Findings of Fact Petitioners are husband and wife residing in Dorsey, Mississippi. They filed their joint income tax return for the calendar year 1952 with the Collector of Internal Revenue for the District of Mississippi. During the year 1952, Albert A. Loden, hereinafter referred to as petitioner, was an electrician and a member of the International Brotherhood of Electrical Workers, Local 852, located in Corinth, Mississippi. Prior to December 1951, petitioner was employed as a molder in Northern Illinois. In December of 1951, petitioner *274 and his family, consisting of his wife and daughter, moved to a six-acre cotton farm in Shannon, Mississippi, which he had rented the previous month. Petitioner joined the International Brotherhood of Electrical Workers in December 1951. Shortly thereafter, he was advised by the business agent of his union local that electricians were needed in the Paducah, Kentucky, area. He proceeded to that point and obtained employment with the firm of F. H. McGraw & Company in Kevil, Kentucky. He remained in the employ of that company from December 1951 until July 1, 1952, when his employment was terminated. When petitioner was hired by McGraw & Company in December 1951, no definite time was fixed for his employment. McGraw & Company was engaged in the construction of a plant for the Atomic Energy Commission. While petitioner was employed by F. H. McGraw & Company in Kevil, his family remained in Shannon. Petitioner stayed in rooming houses, and hotels in Paducah, Kentucky; Kevil, Kentucky; Barlow, Kentucky; and Cairo, Illinois. He worked six days a week for the first 17 weeks of his employment and five days a week thereafter until his employment was terminated. Petitioner returned to his *275 residence in Shannon every week end during the period he was working in Kevil - a round trip of 484 miles. Petitioner was next advised by his union local that there were job openings for electricians in the Memphis, Tennessee, area. He proceeded to Memphis where he was employed by the Standard Electric Company in Woodstock, Tennessee, which company was a subcontractor for construction of a chemical plant for E. I. DuPont DeNemours Company at Woodstock. He worked for that company from the second week in July 1952 until the latter part of November or early part of December 1952. When petitioner was employed by the Standard Electric Company he was told that his employment would last about two months. However, it lasted longer than that and petitioner worked for this company about four months. During the first 10 weeks of his employment with Standard Electric Company petitioner lived in rooming houses in Memphis. He returned to his residence in Shannon each week end - a round trip of 232 miles. He then moved his family to Memphis and discontinued his farming operations in Shannon. Upon completion of his employment with Standard Electric Company petitioner was advised by his union *276 local that employment was available for electricians in the New Orleans, Louisiana, area. He proceeded to New Orleans where he secured employment with the Foothill Electric Corp. in Chalmette, Louisiana, on or about December 10, 1952. The Foothill Electric Corp. was a subcontractor for the construction of an aluminum plant for the Kaiser Aluminum Company. While employed at Chalmette, petitioner lived in rooming houses in New Orleans until January 1953, when he moved his family to New Orleans. Petitioner's employment with the Foothill Electric Corp. was for an indefinite period. The record shows that petitioner was employed by Foothill Electric Corp. for the rest of the year 1952. It does not show how long in 1953 he continued his employment there - we do not have the year 1953 before us. The travel involved in connection with petitioner's move from Memphis to New Orleans is as follows: 155 miles from Memphis to Corinth, Mississippi, by way of Tupelo, Mississippi; 405 miles from Corinth to New Orleans; and a 790-mile round trip to Shannon for the purpose of moving his family to New Orleans. During the 21-day period in 1952 that petitioner was employed in Chalmette he commuted a *277 total of 84 miles from his lodgings in New Orleans to his job site in Chalmette. Petitioner was reimbursed $7.20 by his employer for this travel, but did not include this amount in his gross income. Petitioner's claim for traveling expenses is summarized as follows: Days
Miles
Away from
of Travel
Residence
Paducah, Kentucky to Shannon, Mississippi: 26 round trips at 484 miles
12,584
130
Woodstock, Tennessee to Shannon, Mississippi: 10 round trips at 232 miles
2,320
50
Memphis, Tennessee to New Orleans via Tupelo, Mississippi and
Corinth, Mississippi
560
To work and return, New Orleans toChalmette, Louisiana: 21 days at 4 miles per day
84
21
New Orleans to Shannon, Mississippi and return
790
Totals
16,338
201
16,338 miles at 7" per mile
$1,143.66
201 days at $5.00 per day
1,005.00
While the foregoing amounts total $2,148.66, as a matter of fact petitioners only claim 16,154 miles of travel and their assignments of error heretofore noted claim a total of $2,135.78 as traveling expenses, including board and lodging for 1952. Therefore, it is this amount of $2,135.78 which will be considered at issue. In the *278 joint income tax return filed by the petitioners for the calendar year 1952, petitioner claimed traveling expenses on the basis of 180 days away from home at $9 per day for a total of $1,620. Petitioners, of course, have the right in their petition to increase the amounts of their claim and this they have done in their assignments of error, as shown in our preliminary statement. In their joint income tax return for the calendar year 1952, petitioners claimed specific deductions totaling $594.96. Petitioners' allowable specific deductions for that year are in the total amount of $428.60. During the period of approximately eight and one-half months in 1952 when petitioners rented the farm in Shannon, petitioners produced four bales of cotton of which the equivalent of two bales thereof was paid to their landlord as rent. Petitioners received gross income from their part of the cotton in the amount of $330.90. They expended in the production and gathering of this cotton, the following amounts: Cotton picking
$58.50
Cotton poison
10.50
Fertilizer
20.00
Total expense
$89.00 The net amount received by petitioners from the cotton which they produced in 1952 was *279 $241.90. This amount was not reported on their income tax return. Petitioner's wages from his employment as an electrician in the year 1952 were in the total amount of $5,633.17. Opinion BLACK, Judge: Petitioners have not filed any brief but we have carefully considered their contentions made at the hearing. We have no issue as to what petitioner's gross income was. He reported his wages as an electrician received in 1952 from his three employers as $5,633.17. Respondent does not contend that his wages totaled any larger sum. In addition to the wages which petitioner received, petitioners also received some income from a small farming operation on rented land located at Shannon, Mississippi. The gross income from this operation was $330.90, but petitioners had expended for cotton picking, cotton poison, and fertilizer a total of $89. This amount was clearly deductible as a business expense. What petitioners should have done was to report $330.90 as part of their gross income and then to have deducted $89 as business expense in arriving at their adjusted gross income. They did not do this, however. They reported no income from the cotton farming operation. Respondent, as has *280 already been noted, added to the net income reported by petitioners on their return their net income from the cotton farming operation amounting to $241.90. Petitioners do not contest the correctness of this adjustment. Therefore, the issue which we have to decide is whether petitioners, in arriving at their adjusted gross income, are entitled to deduct as traveling expenses $1,005 which petitioner Albert Loden expended for 201 days meals and lodging at $5 per day at his three places of employment as an electrician in 1952, and $1,130.78 which petitioner expended in 1952 for 16,154 miles of travel, most of which was from his places of employment as an electrician to the farm residence in Mississippi where his wife and daughter resided most of the year, and then return to his place of employment. Respondent does not dispute the reasonableness of the $5 a day meals and lodging expenses which petitioner incurred nor does he question that 7 cents a mile for traveling by automobile was reasonable. What respondent does dispute is that petitioners are entitled to any deduction at all for traveling expenses in 1952. Respondent, in support of his disallowance of these traveling expenses *281 cites the following provisions of the 1939 Code: "SEC. 22. GROSS INCOME. * * *
"(n) Definition of "Adjusted Gross Income". - As used in this chapter the term "adjusted gross income" means the gross income minus - * * *
(2) Expenses of travel and lodging in connection with employment. - The deductions allowed by section 23 which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee; (3) Reimbursed expenses in connection with employment. - The deductions allowed by section 23(other than expenses of travel, meals, and lodging while away from home) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer." Respondent also cites and relies upon the Supreme Court's decision in Commissioner v. Flowers, 326 U.S. 465. Respondent also cites and discusses many other cases bearing upon the general subject. Among the cases which respondent discusses is Joseph H. Sherman, Jr., 16 T.C. 332, *282 where it was held that for tax purposes the taxpayer's home was in Worcester, Massachusetts, and that he was entitled to deduct his expenses for travel to and from New York City, where he was engaged in another business, and for meals and lodging while there. Respondent argues that that case is not controlling here but that the instant case is more like S.M.R. O'Hara, 6 T.C. 841, which was distinguished in the Sherman case, supra. In the O'Hara case, it was held that household expenses paid by the taxpayer while in Harrisburg, Pennsylvania, where she held the position of Secretary of the Commonwealth of Pennsylvania at a salary of $10,000 per annum were not deductible as traveling expenses even though the taxpayer retained a residence and association with a law firm at Wilkes-Barre from which, in the taxable years, she received income in the respective sums of $1,825.45 and $246.55. We do not think that either the Sherman case, supra, or the O'Hara case, supra, in its facts is very close to the facts of the instant case in so far as the $1,005 which the petitioner expended in 1952 for meals and lodging at the three places where he was more or less temporarily employed *283 during that year. We think that the question of allowing the petitioners in the instant case a deduction of $1,005 for meals and lodging which Albert expended in 1952 while he was employed as an electrician at three different places is more like Harry F. Schurer, 3 T.C. 544 and E. G. Leach, 12 T.C. 20. In the Schurer case, the taxpayer was a journeyman plumber by trade. His tome was in Pittsburgh, Pennsylvania. In 1941, he accepted temporary employment at Indiantown Gap, near Harrisburg, Pennsylvania, at Aberdeen, Maryland, and at Morgantown, West Virginia. Upon the completion of each of these assignments he returned to Pittsburgh. In 1941, he spent $940 for meals and lodging and $21.26 for railroad and bus fares while away from home. On these facts we held that the amounts thus expended were deductible from gross income as expenses of carrying on the taxpayer's trade or business. In E. G. Leach, supra, in which we decided the issue of the deductibility of lodging in favor of the taxpayer, we said: "The petitioner had no regular post of duty or place of regular employment during 1945 away from Florence which could be called his 'home' or which *284 he could be required to regard as his home for the purpose of section 23(a)(1)(A). None of the places at which he had temporary employment during the year was his 'home.' The expenses (lodging only) were unavoidable, reasonable, and necessary expenses while away from his 'home' in pursuit of his trade. The Commissioner erred. Harry F. Schurer, 3 T.C. 544." Inasmuch as the facts in the instant case in so far as lodging expenditures are concerned seem to fit into the pattern of the facts involved in the Schurer and Leach cases, both supra, we hold in favor of the petitioners as to the $1,005 which they claim as a deduction for lodging expenses incurred by Albert in 1952 while away from home in pursuit of his trade as an electrician. It should be pointed out that petitioner makes no claim for meals and lodging at the place of his temporary employment at Woodstock, Tennessee, after he moved his family there. After the four bales of cotton raised by petitioners on the six acres of land rented at Shannon were gathered and sold, petitioner moved his family to Woodstock. He only claims meals and lodging for the 10 weeks at Woodstock before he moved his family there. Ten weeks, *285 5 days a week, 50 days in all at $5 a day is what petitioner claims. We think the facts in the instant case as to the lodging expenses incurred are entirely different from those incurred by the taxpayer in the Flowers case, supra, upon which respondent strongly relies. In that case the taxpayer's sole employer for the years 1939 and 1940, the years there involved, was the Gulf, Mobile and Ohio Railroad Company which had its principal office in Mobile, Alabama, and the Supreme Court held that Mobile was the taxpayer's principal place of employment and that the fact that he preferred to reside in Jackson, Mississippi, and do much of his work there did not give him the right to deduct traveling expenses while away from his principal place of business in Mobile. For reasons we have already stated, we do not think we have any such facts here as to the lodging expenses incurred by petitioner in 1952. But while we think petitioner's lodging expenses incurred in 1952 at his three places of employment as an electrician were deductible, we do not think his claim for a deduction of $1,130.78 for amounts expended for 16,154 miles of travel can be sustained. It is plain that petitioner's employment *286 as an electrician at his three places of employment in 1952 did not require the travel which was made. It did not require any travel at all. While it is true that petitioners carried on a small farming operation at Shannon, where they had their residence most of the year, we do not think that there is any satisfactory showing that the weekly trips which petitioner made to his home in Mississippi, and return, were necessary in the carrying on of his small farming operation. He made 26 round trips to Shannon while he was employed at Kevil, Kentucky, and 10 round trips to Shannon while he was employed at Woodstock, Tennessee. That was 36 round trips in all. The expenses of these trips, it seems to us, were personal expenses made for the paramount purpose of visiting his family and are not deductible. Included in petitioner's claim for the cost of automobile travel is a trip from Memphis to New Orleans for the purpose of securing employment with the Foothill Electric Corp.; 21 round trips of four miles each between lodgings in New Orleans and the site of his employment at Chalmette, Louisiana, for which he was reimbursed by his employer; and a round trip from New Orleans to Shannon for *287 the purpose of moving his family. Expenses incurred by petitioner on his trip to New Orleans in search of work were personal expenses and are not deductible. Mort L. Bixler, 5 B.T.A. 1181. In the Bixler case we said: "A considerable portion of the expenses claimed were incurred by the petitioner in securing employment and in going from his home to such place of employment and return, and we think amounts expended in seeking employment or returning to his domicile after the termination of such employment are not deductible under the statute, nor are the amounts expended in going from his place of employment to visit his family a proper deduction from gross income. * * *" Petitioner's expenses of travel between New Orleans and Chalmette are not deductible since there is no showing that petitioner was required to live at a distance from his work and since commuter's expenses are personal and not deductible. Frank H. Sullivan, 1 B.T.A. 93. The cost of petitioner's trip to Shannon to move his family to New Orleans is not deductible since expenses incurred by an employee in moving his family to another locality where he has accepted employment are personal expenses *288 and not deductible. Baxter D. McClain, 2 B.T.A. 726. We hold against petitioners on the issue of their claimed deduction for amounts expended in 1952 for automobile transportation. Decision will be entered under Rule 50.